914

UNITED STATES v. 240 ACRES OF LAND, MORE OR LESS, IN DADE COUNTY, FLA.

Civil Action Case No. 721-M.

District Court, S. D. Florida, Miami Division.

Oct. 26, 1945.

William D. Jones, Sp. Asst. to Atty. Gen., for plaintiff.

Paul H. Brinson, of Coral Gables, Fla., for claimant E. B. Carpenter.

Lilburn R. Railey, of Miami, Fla., for claimant Bellefonte Trust Co., executor of estate of A. R. McNitt.

DE VANE, District Judge.

The United States condemned a tract of land in Dade County, Florida, which included 115 acres for which $4,150 was awarded. This sum has been deposited by Petitioner in the Registry of the Court and the question before the Court is who is entitled to this money.

At the time of taking, the record title to the land was in Louise Zinkhan, subject to a $15,000 mortgage, given by her to Andrew R. McNitt. Louise Zinkhan filed a disclaimer of any interest in the land or the proceeds, asserting that she merely held title to the land as Trustee for E. B. Carpenter and Andrew R. McNitt. The Bellefonte Trust Company, as Executors of the Estate of Andrew R. McNitt, filed claim to all the money by virtue of the mortgage held by McNitt on the property. E. B. Carpenter filed a claim to the money as surviving partner of a joint co-partnership venture entered into by him and McNitt, acknowledging in his Petition that McNitt or his Executor or heirs are legally entitled to one-half the proceeds now in the Registry of the Court, less certain expenses he claims to have advanced on account of this joint venture.

When the case was first before the Court on a motion of the executor to strike the claim or answer filed herein by Carpenter, on the ground that it sought to set up the existence of a contemporaneous, collateral verbal agreement, which varied and contradicted the terms of a written instrument, under seal (the mortgage), the Court granted the motion to strike that part of the petition or answer of Carpenter, that set up such contemporaneous, collateral verbal agreement. The issue raised by the Motion involved purely a question of State law. The Supreme Court of Florida had, just a few days before, decided Jackson v. Parker, 153 Fla. 622, 15 So.2d 451, but this decision had not, on said date, been published and was not, therefore, before the Court.

When the decision came down Carpenter filed a motion for rehearing, which the

Court granted and on rehearing held that the decision of the Supreme Court in Jackson v. Parker had modified the rule in Florida as to the admissibility of parol testimony to prove the existence of a contemporaneous, collateral verbal agreement to vary the terms of a written instrument, under seal. The Court then set aside its order striking petition or answer of Carpenter, and on final hearing permitted proof to be submitted in conformity with the holding of the Supreme Court of Florida in Jackson v. Parker.

The facts disclose that the transaction between Carpenter and McNitt was an old Florida Land Boom transaction. Carpenter had bought a 120 acre tract of land in 1925, of which the 115 acres here involved was a part, taking title to the same in the name of Louise Zinkhan, who was associated with him at the time and who later became his wife. In 1927, through the efforts of Mrs. Helen Ghorley, a real estate broker of Miami, Carpenter and McNitt reached an agreement for the joint ownership on an equal participation basis of the 120 acre tract and its development and sale. The land was to be developed and sold as poultry farms. McNitt placed in escrow $20,000 cash, to be expended in accordance with instructions given the escrow agent by McNitt.

Plans called for the organization of a Florida corporation, through which the land would be developed and sold. Such a corporation was organized and took title to five acres of the land. The stock of the corporation was divided equally between McNitt and his representative and Carpenter and his representative; McNitt and Carpenter each taking 49 shares; and Louise Zinkhan and O. J. McNitt (brother of Andrew R. McNitt) took one share each.

Judge Price of Miami was the escrow agent to whom the $20,000 was paid and he was directed by McNitt to pay off all incumbrances on the 120 acres of land; to organize the corporation; to place title to five acres of the land in the corporation; to take a $15,000 mortgage from Louise Zinkhan on the remaining 115 acres; to pay all fees and expenses in perfecting the arrangements; and to pay any balance to the corporation. It was estimated at the time that the underlying mortgages, plus fees and expenses, would amount to approximately $15,000, leaving approximately $5,000 as working cash capital for the

corporation. However, when the plan was finally consummated the mortgages were all discharged for $11,291.40 and part of the balance was used to pay fees and expenses and to reimburse Carpenter and Louise Zinkhan for advances they had made. The net balance of $6,829.01 was deposited to the account of the corporation. Neither Carpenter nor Louise Zinkhan received any part of the $20,000.

After the preliminaries were completed Carpenter married Louise Zinkhan and O. J. McNitt married Helen Ghorley. The Florida Land Boom was over at the time, although no one owning real estate in Florida would admit it, and the venture turned out to be disastrous to all parties concerned. The 1928 hurricane partially destroyed the poultry plant, built on the five acre tract, and soon thereafter a Glades fire completely wiped out what was left. In 1929 McNitt disappeared and has never been seen nor heard from since.

The Bellefonte Trust Company was appointed executor of his estate in Pennsylvania, under a Statute of that State authorizing such appointment on presumption of death after absence for a definite number of years. Carpenter testified that after the disappearance of McNitt and before the appointment of the executor he worked out an arrangement with the heirs of McNitt by which he saved the property from tax sales, and under the agreement with them he was to salvage what he could out of the property and divide the net proceeds equally between himself and McNitt or his heirs or legal representative. in case McNitt never showed up again.

Counsel for the executor objected to much of the testimony introduced in the case which was offered to establish the existence of a co-partnership venture between Carpenter and McNitt, on the ground that McNitt being dead, neither Carpenter nor Louise Zinkhan could testify to the transactions. Counsel for the executor relies upon Section 90.05, Florida Statutes, 1941, F.S.A. and numerous Florida cases decided thereunder. He rests his case chiefly on Jackson v. Parker, supra. In that case the Supreme Court said [153 Fla. 612, 15 So.2d 456]:

"The testimony of the Jacksons above referred to was properly objected to in the beginning by the plaintiffs so the chancellor's ruling was correct. The testimony of Mr. and Mrs. Jackson as to the understanding between them and the Monroes with

reference to the amount of the purchase price and how it was to be paid and the other terms and conditions of the purchase and sale which the Monroes offered and which they agreed to accept, cannot be considered, no matter how true."

The Supreme Court then went on to say:

"Fortunately for Mr. and Mrs. Jackson, they were able to adequately prove by disinterested and unimpeached witnesses the terms on which they had purchased the property from Mr. and Mrs. Monroe. We refer to the testimony of Mr. and Mrs. Michels as to the statements made to them by the Monroes right after the Monroes had sold to the Jacksons, as to the terms of such sale, which conversation took place in the presence of the Jacksons, and which showed that they offered to sell another place to the Michels at exactly the same price and on the same terms. We also refer to the testimony of Mrs. Hooper to whom a similar proposition was made while the Monroes were still visiting in Ocala, though this witness did not name the purchase price mentioned."

While this Court overruled objections to the admissibility of the testimony of Carpenter and Louise Zinkhan and their testimony will be found in the record (the Court is still of the opinion their testimony is admissible), the Court decides this case upon the testimony of other witnesses and such of Carpenter's and Louise Zinkhan's testimony as is not subject to the objection, as to the existence of the contemporaneous, collateral verbal agreement between Carpenter and McNitt. The testimony of Judge Price and Mrs. Ghorley (now Mrs. O. J. McNitt) is sufficient to establish the existence of the agreement. And upon their testimony and other admissible testimony offered by Carpenter, the Court holds that there was a contemporaneous, collateral verbal agreement between Carpenter and McNitt for a fifty-fifty partnership venture in the development of the 120 acre tract and that the $15,000 mortgage was without consideration. The sole purpose of the mortgage was to protect McNitt against the other parties disposing of the property without his consent. See Taylor v. Hodges, 65 Fla. 502, 62 So. 588.

In the briefs filed with the Court in this case, counsel for both parties ably discuss many other intricate legal questions bearing upon the rights of each, but the Court does not consider it necessary in the final disposition of this case to deal with any of them except the one set out below, in this Memorandum Opinion. It would make the Opinion unnecessarily long and bring about no different results.

Carpenter contends that as surviving partner of the joint venture with McNitt he is entitled to receive all the proceeds from the condemnation of these lands to reimburse himself for expenditures made and to divide the net proceeds between himself and the executor or heirs of McNitt. This is the general law applicable to co-partnerships on the death of one partner. However, the Court has before it the responsibility of ordering the distribution of the funds in the Registry of the Court and the Court is not willing to turn all the money over to Carpenter and let him and the heirs and executor of McNitt fight about how it should be divided. The parties, therefore, are directed to get together and agree upon a division of the money in the Registry of the Court, or upon failure to agree to set the matter down before the Court for determination by it.